POINDEXTER CHERRY, plaintiff in error, *vs.* CHARLES H. Mc-CALL, defendant in error.

[1.] McC. and C. had a fight; afterwards, but in course of the same day, McC. went to a magistrate, two or three hundred yards from the place of the fight, for a warrant for C.: whilst there, he made certain statements about the fight.

*Held,* That enough did not appear, to show that these were a part of the *res gestæ.*

[2.] C. was indicted and fined, for an assault and battery. He was also sued for the same assault and battery. On the trial of the civil suit, he gave in evidence, the record of his conviction and fine, in order to protect himself against the payment of "exemplary damages." The *Court charged,* that this conviction and fine did not protect him in any degree, from such damages. *Held,* That this charge was erroneous.

Trespass, for assault and battery, in Marion. Tried before Judge WORRILL, March Term, 1857. On appeal.

This was an action of trespass *vi et armis,* by Charles H. McCall against Poindexter Cherry, for an assault and battery. The plaintiff laid his damages at one thousand dollars.

Upon the trial, it appeared that on the 1st January, 1855, the parties met at Buena Vista, the Court-house of Marion county, and after a short altercation and angry words, a fight ensued; the parties came together and McCall was thrown down and choked; they were separated, Cherry pulled off; McCall's face was bruised and raked a little, and his neck scratched.

The two questions made by the bill of exceptions, and considered by this Court are; 1st. Upon the admissibility of Benj. F. Blanton's testimony , and 2d, the charge of the presiding Judge.

*Blanton,* a witness for the plaintiff, testified, that on the day of the difficulty, and after it took place, he saw McCall and talked with him on the opposite side of the public square, to that where the difficulty occurred; some two or three hundred yards from the place, where McCall had gone to get a warrant; he was excited; did not know how long after the difficulty it was. The scratch and bruises on McCall's face seemed to have been recently done; that he seemed to be in feeble health, and complained of his back, and that it was injured and pained him. Defendant's counsel objected to the admission of these sayings and statements. The Court

overruled the objection, and the testimony was admitted and this constitutes the first ground of exceptions.

At March Term, 1856, of the Superior Court, defendant was indicted for this same assault and battery, plead guilty, and was fined by the Judge $300, which he paid. This record defendant offered in evidence, for the purpose of mitigating damages. Plaintiff's counsel consented to its introduction, provided the whole, plea of guilty, and all, should go to the jury, for what it was worth. The record was then admitted.

The testimony being closed, and argument had, the presiding Judge, charged the jury as follows, viz:

Should you believe that the defendant was the aggressor and by his act and conduct brought on the fight, it is in your power to give plaintiff any amount of damages you think proper, provided you do not go beyond the amount claimed in the declaration, the law has vested this power in you, not to be exercised capriciously, but in moderation and justice, and with reference to the peculiar circumstances of the case.

If the proof shows that the fight was mutual between the parties, and that plaintiff by his conduct showed a willingness to enter the contest and was as eager for the same, and did as much to bring it about as the defendant, then the plaintiff would not be entitled to any damages, and they must find for the defendant.

In a case like this, if the proof shows that the defendant was in the wrong, the jury may give the plaintiff exemplary damages. And it is for you to examine the facts of the case and determine whether it would be right to find such damages; if in your judgment it is a proper case for the exercise of this power, you should give the plaintiff such damages as will be a warning to others, as well as to defendant: for the object of the law in inflicting punishment on those who

violate it, is not to take vengeance upon them, but to make their punishment an example to others as well as themselves.

The plaintiff insists that the defendant beat him without provocation and in a way calculated to degrade him among his fellow-citizens; if you think so, you should give the plaintiff damages for the same, and this is a proper matter for you to consider, in determining the amount of damages you may find. If a party without sufficient provocation beats another, he subjects himself to damages and it is an aggravation of the injury, if it is committed in a manner calculated to degrade the party. It is wrong to beat a man, and a great deal worse to degrade him.

The plaintiff further insists that the defendant beat him in a way calculated to wound his pride and mortify his feelings, and for this insists upon damages. The law has a proper regard for the feelings of the citizen, and when he is injured in a manner calculated to wound his pride or mortify his feeling, the law makes it an aggravation of the injury. The government is interested in having its citizens possessed of all the pride a freeman should have, who is entitled to a voice in making its laws, in selecting its officers, and conferring its honors. It is extremely humiliating to a proud and sensitive man to be beaten by another. Money would scarcely afford him a recompense. This is a noble feeling, and the law intends to protect it. Then gentlemen, if in this fight you think the defendant was the aggressor and that he beat the plaintiff in a way to wound his pride or mortify his feelings, you will take the same into consideration in estimating the damages.

Counsel for the defendant have insisted that you ought not to give the plaintiff exemplary damages, because it would increase litigation of this kind. With that you have nothing to do. This case you must decide upon its own merits; and if the plaintiff is entitled to damages, give him such as he deserves. But I apprehend it is not the policy of the law to drive suitors from our Courts, but on the contrary, to en-

courage parties when they conceive their rights have been invaded, to appeal to the tribunals of the country for redress. Let us so administer the law that the people will feel it is a protection to them, and that when they are injured, that here they may seek and obtain satisfaction.    This I apprehend is the duty both of Courts and jurors.

It appears that the defendant was indicted in this Court for the same battery he is sued for in this action; that he plead guilty and was fined $300.    Counsel for defendant have contended that the jury cannot therefore give the plaintiff exemplary damages: Such gentlemen is not the law.    That fine has nothing whatever to do with the plaintiff's right to damages in this case.    And should you think the facts of this case entitle the plaintiff to exemplary damages, you will not reduce the amount one cent on account of that fine. That was a case between the defendant and the State.    The State was plaintiff and McCall has nothing to do with it.    I imposed that fine.    I did it under an honest conviction of duty.    I thought then and still think I was right.    And in this case I trust you will do your duty as honestly and as independently as I endeavored to perform mine on that occasion.

The jury found for the plaintiff three hundred and fifty dollars.

And defendant by his counsel excepts and assigns as error:

1st. The admission of the testimony of Benj. F. Blanton, as to the sayings of McCall relative to his condition.

2d. That there was error in the charge of the Court in reference to the record of the criminal prosecution.

INGRAM; and DAVIS, for plaintiff in error.

CRAWFORD & BLANFORD, by B. HILL, for defendant in error.

*By the Court*—BENNING, J. delivering the opinion.

The first question is, were the sayings of McCall a part of the *res gestæ.*

These sayings were not uttered at the time, or at the place, of the actual fight. The time when they were uttered was afterwards on the same day, but how long afterwards on that day, does not appear; the place where they were uttered was on the opposite side of the public square, two or three hundred yards from the place of the fight.

The time and place of the sayings, were the time and place of the suing out of a warrant, by McCall, to arrest Cherry, the other party to the fight, the sayings may have been his very statements to the magistrate to whom he was applying for a warrant.

[1.] We think that there does not appear enough to show, that these sayings were a part of the *res gestæ ;* and, therefore, that they ought to have been excluded.

The next question is, was there error in that part of the charge of the Court, which relates to the record that was in evidence ?

That record was the record of Cherry's conviction and fine for the same assault and battery on which the action was founded. And it had been put in evidence, by Cherry, that it might be a defence to him, against a verdict for "*exemplary* damages."

The charge of the Court in relation to the record was, in substance, that the record could not be any defence to Cherry, against such damages. The question is, was that charge right ?

What did the Court mean by "*exemplary damages ?*" It meant such damages, as might be a *punishment* to Cherry, for his assault and battery. In another part of the charge, its words in reference to such damages are,—"Such damages as will be a warning to others as well as the defendant: for the

object of the law, in inflicting punishment on those who violate it, is not to take vengeance upon them, but to make the punishment an example to others, as well as themselves."

The question, therefore, is, could this record be any defence to Cherry against *punishment* in the action?

The record showed, that Cherry had already been once punished for the assault and battery.

And there is not a better settled principle of law than this; a man shall not be twice punished for the same offence.

To say, that the record was no defence to Cherry against *punishment* in the action, is to say, that Cherry might be punished twice for the same offence; and, therefore, is to offend against the principle aforesaid.

We think, therefore, that the Court below erred in so saying.

It is true perhaps that, in so saying, the Court had the support of a case decided in N. York, (*Cook vs. Ellis*, 6. *Hill*, 465;) but if so, we cannot recognize the authority of that case. The Court in that case say,—"We concede that smart money allowed by a jury, and fines imposed at the suit of the people, depend on the same principle. Both are penal, and intended to deter others from the commission of the like crime. The former however, becomes incidentally compensatory for damages, and at the same time answers the purpose of punishment." What is meant by this last sentence, to say that "smart money," i. e. mere *punishment money*, " becomes incidentally compensatory for damages," is to say, what I cannot well distinguish from a contradiction in terms, when in a case, there are given punishment-damages, and also, compensation-damages, can it be said, without a contradiction in terms, that the punishment-damages are compensation-damages. To be sure, we have the word " incidentally," and there is no telling what that word cannot do, at a pinch.

The case of *Jenks vs. Bell*, 3. *Car. and Payne*, seems to be to the contrary of this New York case.

[2.] The Court below, we think, ought not to have gone further in its charge to the jury than this,—to tell them, that if they did not think the fine a sufficient punishment, they might increase the damages by such a sum, as would, in their opinion, make the punishment sufficient. And going as far as this, would be, perhaps, going too far. Is it not to be *presumed*, that the punishment imposed by the Court in a case set on foot solely to bring about punishment, is *sufficient?*

I beg to make this remark, for myself. The question, whether what are called, vindictive, or punitive, or exemplary, damages, are authorized by the law, was not raised by the plaintiff in error. He did not except to that part of the charge which assumed, that such damages are allowed by the law. Hence, perhaps, it was not necessary for this Court to notice the question, whether such damages are authorized by law. I feel bound, however, to say, that I have a strong conviction, that they are not. I know, that according to some late cases, in some of the Northern States, such damages are recoverable. But none of these cases go back to any thing that deserves the name of *authority* in this State. There is not, I think, one single English case of any date for them to rest on, and not even an English dictum before the time of Lord Kenyon.

As I understand the law, the measure of damages is what will be *remuneration* or *compensation*, when a man is fully remunerated for an injury done to him, he has, I think, got all that the law gives him, or ought to give him, a right to demand. There are many cases in which, as I admit, the injured man does not get full remuneration, but that is no reason why in any case, he should, get *more* than full remuneration.

What is the nature of injuries, especially such as seduction, slander, &c., and what is remuneration for them; are questions upon which, I shall not enter. These are questions which, what I take to be the true rule, viz. compensation, leaves almost without check to the jury; and it

may, I think, be safely said that the consequences of the observance of this as the rule, have not been such that the injured party was the one to complain of them.

We think there ought to be a new trial.

Judgment reversed.